UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Michael Dehlendorf,

    Plaintiff,

v.

City of Gahanna, Ohio,
  et al.,

    Defendants.

Case No. 2:10-cv-623

Judge Michael H. Watson

## OPINION AND ORDER

This case concerns a police investigation concerning allegedly harassing e-mails and the resulting criminal trial.  Plaintiff brings this action against Defendants under 42 U.S.C. § 1983, but also asserts several state law claims, including defamation, slander, and filing a false police report.  Defendants David W. Fisher ("D. Fisher"), Beth Fisher ("B. Fisher"), and Kephart Fisher, LLC ("Kephart") (collectively "Defendants") move for judgment on the pleadings with respect to Plaintiff's claims of defamation, slander, and filing a false police report on the sole ground of absolute immunity.  Mot. J. Pleadings, ECF No. 9.  For the reasons that follow, the Court denies Defendants' Motion for Judgment on the Pleadings.

### I. FACTS

The Court accepts as true the well-pleaded facts set forth in the Complaint. Plaintiff resides in Franklin County, Ohio.  In late 2007, Plaintiff became upset with B. Fisher and D. Fisher about a real estate matter and began sending numerous e-mails from his office in Gahanna to D. Fisher's office in Columbus and to B. Fisher.  He

continued to e-mail D. Fisher and B. Fisher until November 26, 2007, when members of the Gahanna Division of Police told Plaintiff to stop sending the e-mails.

Plaintiff relocated his office to Jefferson Township on January 31, 2008. In May 2008, he resumed sending e-mails to D. Fisher and B. Fisher. D. Fisher told the Gahanna Police Department that he had received e-mails from Plaintiff on November 26, 2008 and November 30, 2008. As a result of the report, the city of Gahanna arrested Plaintiff on December 1, 2008, and charged him with telecommunications harassment in violation Ohio Rev. Code § 2917.21. Defendants were subsequently given an order of protection against Plaintiff, and the dispute was published in a local newspaper article. Following a jury trial, the charges against Plaintiff for violating Ohio Rev. Code § 2917.21 were dismissed, but Plaintiff was required to post a $500 peace bond.

## II. MOTION FOR JUDGMENT ON THE PLEADINGS

The standard of review for a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is the same as that for a motion for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Monroe Retail, Inc. v. RBS Citizens, N.A.*, 589 F.3d 274, 279 (6th Cir. 2009). A claim survives a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555–56 (2007) (internal citations omitted).

A court must also 'construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). In doing so, however, plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "[A] naked assertion . . . gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility . . . ." *Twombly*, 550 U.S. at 557. Thus, "something beyond the mere possibility of [relief] must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value." *Id.* at 557–58 (internal citations omitted).

## III. DISCUSSION

Defendants raise one ground for dismissal of Plaintiff's claims of defamation and filing a false police report: absolute privilege bars any civil liability stemming from the filing of police reports, including the two allegedly false police reports which may have defamed and slandered Plaintiff's professional and personal reputation. Plaintiff argues that the claim cannot be dismissed because the Defendants' reports are shielded only by qualified immunity, and the errors in the Defendants' police reports were made with malice, which would defeat a qualified immunity defense.

Absolute privilege confers civil immunity for making a false, defamatory statement even if it was made with actual malice, in bad faith, and with knowledge of its falsity. *M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St. 3d 497, 505 (1994). In contrast, qualified immunity does not protect a person who makes a defamatory statement from civil liability if the statement is made with actual malice, in bad faith, or knowledge of its falsity. *Id.* Statements made in a "judicial proceeding" are protected by absolute immunity. *Id. DiCorpo* held that an affidavit, statement or other information submitted to a prosecuting attorney for the purpose of reporting an actual or possible crime is part of a judicial proceeding because it initiates the investigation process and possible prosecution. *Id.* at 506. The court reasoned that applying absolute privilege in that set of circumstances would "encourage the reporting of criminal activity by removing any threat of reprisal in the form of civil liability," which would "aid in the proper investigation of criminal activity and those responsible for the crime." *Id.* "The absolute privilege or 'immunity' for such statements in a judicial proceeding extends to every step of the proceeding, from beginning to end." *Id.* In addition to being part of a judicial proceeding, the statement must also bear some "reasonable relation to the activity reported," meaning that the statement "must tend to prove or disprove the point to be established, and have substantial importance or influence in producing the proper result." *Bigelow v. Brumley*, 138 Ohio St. 574, 591–92 (Ohio 1941).

Ohio appellate courts have broadly interpreted the absolute immunity set forth in *DiCorpo* and barred civil liability in a variety of claims and circumstances different from those presented in *DiCorpo*. *See Ventura v. Cincinnati Enquirer*, 246 F. Supp. 2d 876, 882 (S.D. Ohio 2003). But Ohio appellate courts have not consistently extended

absolute immunity to statements made to law enforcement personnel. *See Garrett v. Fisher Titus Hosp.*, 318 F. Supp. 2d 562, 578 n.1 (N.D. Ohio 2004) (noting apparent conflict in Ohio appellate courts). Defendants' claim of absolute immunity relies primarily on three decisions from Ohio's Tenth Appellate District: *Haller v. Borror*, No. 95APE06–16, 1995 WL 479424 (Ohio Ct. App. 10 Dist. Aug. 08, 1995); *Fair v. Litel Communication, Inc.*, No. 97APE06–804, 1998 WL 107350 (Ohio Ct. App. 10 Dist. Mar. 12, 1998); and *Lee v. City of Upper Arlington*, No. 03AP–132, 2003 WL 23024437 (Ohio Ct. App. 10 Dist. Dec. 30, 2003).

The defendant in *Haller* contacted police because he believed the plaintiff was attempting to extort money from him. The police encouraged the defendant to collect evidence implicating the plaintiff, and he taped conversations between himself and the defendant. The plaintiff's resulting extortion conviction was overturned, and he later sued the defendant for malicious prosecution, arguing that the defendant presented false information during the investigation to assure the investigation moved forward and the prosecutor would bring charges against the plaintiff. *Haller*, 1995 WL 479424, at *2. The trial court held that the defendant could not be held civilly liable because his conduct was absolutely privileged as a matter of law based on *Dicorpo*. The court of appeals affirmed, stating:

> The Ohio Supreme Court stated the following in the syllabus of *DiCorpo*: "An affidavit, statement or other information provided to a prosecuting attorney, reporting the actual or possible commission of a crime, is part of a judicial proceeding. The informant is entitled to an absolute privilege against civil liability for statements made which bear some reasonable relation to the activity reported."

*Haller*, 1995 WL 479424, at *2 (quoting *DiCorpo*, 69 Ohio St. 3d at 497). *Id.* at *8. The

Court in *Haller*, however, was not asked to determine in the first instance whether absolute immunity under *DiCorpo* extends to statements made to police officers. Rather, the issue before the appellate court in *Haller* was whether absolute immunity under *DiCorpo* extended to claims of malicious prosecution, since *DiCorpo* involved claims of libel and infliction of emotional distress. *Haller*, 1995 WL 479424, at *2. Although the court in *Haller* rejected the plaintiffs' argument that extension of *DiCorpo* would vitiate the tort of malicious prosecution, the court did not analyze the larger issue of whether statements to police officers are part of a judicial proceeding so as to fall within the scope of *DiCorpo*.

The defendants in *Fair* reported the plaintiff to a Columbus Police Department detective after discovering that the plaintiff, their employee, had siphoned money from the defendants' business. *Fair*, 1998 WL 107350, at *3. The detective conducted an independent investigation, concluded that the plaintiff had engaged in criminal conduct, and subsequently helped an assistant prosecutor further investigate the plaintiff. Based on their findings, the assistant prosecutor obtained a grand jury indictment, but criminal charges were later dropped. The court interpreted *DiCorpo* and *Haller* to "stand for the broad proposition that an individual cannot be held civilly liable for information, whether true or false, he or she provides to a prosecuting attorney so long as the information bears some reasonable relation to the alleged activity reported." *Id.* at *6. The court held that the defendants could not be held liable if they had provided erroneous information to the detective or the assistant prosecutor during the course of their investigation into the plaintiff because there was no evidence that the defendants would fall outside the privilege provided by *DiCorpo* and *Haller*. *Fair*, 1998 WL 107350, at *6.

In addition, however, the court in *Fair* stated that there was no evidence that the decision to prosecute the plaintiff was the result of anything but the prosecutor's unfettered discretion. *Id.* As in *Haller*, the court in *Fair* did not address the fundamental issue of whether absolute immunity under *DiCorpo* extends to statements made to police officers as opposed to prosecuting attorneys. Rather, the court appears to have assumed that to be the case. *See id.*

In *Lee*, the Tenth Appellate District of Ohio found that a bank which reported the appellant to the police as a grand theft suspect was protected by absolute privilege. Appellant, who had been accused of draining another woman's bank account of all her money, was arrested and indicted as a result. Prosecutors later dropped all charges after deciding they had arrested the wrong woman. Appellant sued the bank and the city for defamation, but the court ruled that both the bank and the city were protected by absolute immunity under the holding of *DiCorpo*, *Haller*, and *Fair*:

> The Ohio Supreme Court's holding in *DiCorpo* and this court's previous holdings in *Haller* and *Fair* support the trial court's conclusion that a privilege of absolute immunity applies in this case to shield Fifth Third from liability for statements it made to the police and/or prosecutor in the criminal investigation and prosecution of plaintiff arising out of the [alleged fraudulent withdrawal of funds from the bank]. Because all of plaintiff's causes of action against Fifth Third are predicated on Fifth Third's statements, those cases likewise support the trial court's granting summary judgment to Fifth Third on all of plaintiff's claims.

*Lee*, 2003 WL 23024437, at *5. The court further stated in the alternative that even if the bank's statements were protected by qualified immunity rather than absolute immunity, the bank was still entitled to judgment as a matter of law because the plaintiff had failed to present evidence that the bank had acted with malice or lacked probable cause for making its statements. *Id.* As in *Haller* and *Fair*, the Court was not directly

faced with the issue whether statements to police officers are protected by absolute immunity. Indeed, none of the Tenth District appellate decisions explain why absolute immunity extends to statements made to the police.

The Eighth Appellate District of Ohio, however, determined that statements to police officers are not made in the context of a judicial proceeding, and therefore absolute immunity does not apply to such statements. In *Scott v. Patterson*, No. 81872, 2003 WL 21469363, at *3 (Ohio App. 8th Dist. June 26, 2003), the Eighth Appellate District held that a statement made to police at a crime scene was not entitled absolute immunity. *Id.* at *2. The defendant, an NBA basketball player, fractured a man's facial bones after punching him outside of a nightclub. At the crime scene, the assault victim correctly identified the defendant as his assailant to police, but the defendant blamed the plaintiff for the assault. Both the plaintiff and the defendant were indicted for the assault. The defendant plea-bargained, cooperated in the prosecution of the plaintiff, and settled his civil liability to the assault victim for $120,000. The plaintiff refused to plea bargain, stood trial, and was acquitted by a jury. The plaintiff then sued the defendant for malicious prosecution, alleging that the defendant knowingly and maliciously blamed the plaintiff for the felonious assault to avoid prosecution and jail time. The trial court dismissed the complaint after the defendant claimed absolute immunity for making a statement to the police.

The Eighth Appellate District reversed, holding that statements made to police at a crime scene were "part of initial police work," not part of a "judicial proceeding" and therefore not entitled to absolute immunity. *Scott*, 2003 WL 21469363. at *2. The court in *Scott* reasoned as follows:

> In *Reasbeck v. Wheeling Pittsburg Steel Corporation*, the Sixth Circuit Court of Appeals recognized in Ohio that a private individual may be held civilly liable for the initiation of a criminal proceeding only if the information is false or if the individual's desire to have the proceedings initiated was the determining factor in the commencement of the prosecution, citing *Archer v. Cachat*. We review this pronouncement as impacting on whether a distinction lies between giving information to the police or giving an affidavit or statement to a prosecutor. As *Reasbeck* points out, the prosecutor in that case used his own unfettered discretion to prosecute Reasbeck. That court used this fact to find the first and second prong of the malicious prosecution action absent because the prosecutor made the decision to pursue the case against Reasbeck. We have taken that analysis one step further to advance the principle that informing the police is not the same as informing a prosecutor. Under *Dicorpo*, when the prosecutor is informed, the judicial proceedings start. In contrast, when the police are informed, only a complaint has been filed and the proceedings have not started. In this case, from what we know from the record, Patterson told his story to the police. Thus, Patterson's accusation triggered an investigation of the crime charged. This investigation against Scott is the substance of his malicious prosecution action against Patterson. But for Patterson's accusation to the police, Scott would not have been involved. We conclude the initial police work is investigatory and not a judicial proceeding contemplated by *DiCorpo*.

*Id.* The court in *Scott* considered but rejected *Fair* and *Haller*. *Id.* at 3. The *Scott* court also held in the alternative that if absolute immunity applied to statements made to police, the defendant's statement did not bear a reasonable relation to the activity reported. *Id.* at *3.

The court of appeals for the Eleventh District reached the same conclusion based on different reasoning. *See Olsen v. Wynn*, No. 95-A-0078, 1997 WL 286181, at *5–6 (Ohio Ct. App. 11 Dist. May 23, 1997). In *Olsen*, the court concluded that application of absolute immunity to statements made to police would abrogate decades of Ohio case law which held that statements to police officers are entitled to qualified immunity:

> In the first assignment of error in his cross-appeal, Wynn argues that the trial court committed reversible error in holding that statements made to law

enforcement personnel are protected by an absolute privilege. We agree.

The trial court relied on *M.J. DiCorpo v. Sweeney* (1994), 69 Ohio St.3d 497, 634 N.E.2d 203, wherein the Supreme Court held that the traditional absolute privilege covering statements made in judicial proceedings extends to the very beginning of the criminal litigation process and applies to statements made to the prosecutor regarding suspected criminal activity. The instant case is readily distinguishable from *Sweeney* in that the Olsens made their statements to the county sheriff and several of his detectives, not the county prosecutor.

There is a line of appellate decisions that hold statements made to police officers are protected by a qualified privilege. *Popke v. Hoffman* (1926), 21 Ohio App. 454, 456, 153 N.E. 248; *Stokes v. Meimaris* (May 9, 1996), Cuyahoga App. No. 68818, unreported, at 8, 111 Ohio App.3d 176, 675 N.E.2d 1289, 1996 WL 239866; *Hartung-Teter v. McKnight* (June 26, 1991), Defiance App. No. 4–91–2, unreported, at 1 1991 WL 117274; *See, also, Paramount Supply Co. v. Sherlin Corp.* (1984), 16 Ohio App.3d 176, 475 N.E.2d 197 (statements made to federal customs agents about possible illegal exportation of goods are qualifiedly privileged); *Tillimon v. Sullivan* (June 30, 1988), Lucas App. No. L–87–308, unreported, 1988 WL 69163 (court endorsed trial court's statement that information given to a police office or police detective is under a qualified privilege). In dictum, we agreed with this principle in *Thomas v. Bank One* (Dec. 31, 1991), Lake App. No. 90-L-15-164, unreported, at 4.

Not all statements given to the police are protected by a qualified privilege, however. In *Mosley v. Evans* (1993), 90 Ohio App.3d 633, 636, 630 N.E.2d 75, we set forth the necessary elements which a defendant must prove in order to enjoy immunity:

"In order to qualify for this privilege, a defendant must establish that (1) he acted in good faith; (2) there was an interest to be upheld; (3) the statement was limited in its scope to the purpose of upholding that interest; (4) the occasion was proper; and (5) the publication was made in a proper manner and only to proper parties. [ *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 246, 331 N.E.2d 713.]" *See, also, A & B–Abell Elevator Co. v. Columbus/Central Ohio Bldg. & Constr. Trades Council* (1995), 73 Ohio St.3d 1, 8, 651 N.E.2d 1283 (setting forth these same elements for a qualified privilege).

*Id.* See also *Slye v. London Police Dept.*, No. CA2009-12-027, 2010 WL 2488565, at

*8 (Ohio Ct. App. 12 Dist. June 21, 2010) (acknowledging holdings of *Scott* and *Olsen*).

In the instant case, the Court must apply the substantive law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In doing so, this Court is bound by the decisions of the state's highest court. *Pennington v. State Farm Mut. Auto Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). If the state's highest court has not directly addressed the issue, however, this Court must predict how the state's highest court would resolve the matter. *Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 624 (6th Cir. 2008).

In *DiCorpo*, the Ohio Supreme Court determined that persons who provide affidavits, statements, or other information to prosecutors are protected by absolute immunity. 69 Ohio St. 3d at 505. It did so on the basis that the information provided to a prosecutor falls within the scope of a judicial proceeding. *Id.* at 506. The *Scott* decision represents a well-reasoned interpretation of the holding in *DiCorpo*, by drawing a distinction between statements made to prosecutors and those made to police on the basis that prosecutors enjoy virtually unbridled discretion as to whether to prosecute. 2003 WL 21469363, at *2. In addition, the court in *Olsen* aptly pointed out that extending *DiCorpo* to statements to police would sweep aside decades of well-established Ohio jurisprudence applying only qualified immunity to such statements. 1997 WL 286181, at *5. In contrast, *Haller*, *Fair*, and *Lee* do not explain why absolute immunity under *DiCorpo* should apply to statements made to police. The Tenth District decisions do not discuss whether a statement to a police officer is part of a judicial proceeding, nor do they acknowledge Ohio courts' long history of applying qualified immunity to such statements. In fairness to the Tenth District judges, it appears those issues were not squarely presented to them.

The Court also notes that *Scott* and *Olsen* are consistent with a majority of state courts which extend qualified rather than absolute immunity to persons making statements to police about alleged crimes. See *Fridovich v. Fridovich*, 598 So. 2d 65, 67–68 (Fla. 1992) (stating that a majority of courts apply qualified, not absolute, immunity to statements made to police, citing decisions from numerous jurisdictions); *Morris v. Harvey Cycle & Camper, Inc.*, 392 Ill. App. 3d 399, 406 (Ill. Ct. App. 1 Dist. 2009) (acknowledging that Illinois is among a minority of jurisdictions which afford absolute privilege to statements made to police). *See also* Peter Zablotsky, *From Undermining Child Protection Statutes to Creating Exceptions to Prohibitions Against Racial Discrimination in Public Accommodations: The Unsettling Consequences of Mischaracterizing the Police Reporting Privilege*, 32 Ohio N.U.L. Rev. 317 (2006) (advocating that extension of absolute immunity to statements made to police lacks historical underpinnings and has unintended consequence of undermining, *inter alia*, anti-discrimination laws because it immunizes racially-animated false reports to police).

For the above reasons, the Court believes the Supreme Court of Ohio would not consider statements made to the police part of a "judicial proceeding" and therefore would not extend absolute immunity to statements made to the police. In the instant case, Plaintiff alleges that Defendants filed false police reports against him, and due to those actions, defamed and slandered Plaintiff, resulting in damage to his reputation. Defendants rely exclusively on their assertion that absolute immunity protects their reports to the police, and do not raise the defense of qualified immunity. Defendants' statements to police were not part of a judicial proceeding, however, and therefore are not covered by absolute immunity.

## IV. DISPOSITION

Based on the above. the Court **DENIES** Defendants' motion for judgment on the pleadings.  ECF No. 9.

The Clerk shall remove ECF No. 9 from the Civil Justice Reform Act motions report.

**IT IS SO ORDERED.**

*/s/ Michael H. Watson*
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**